**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BALDWIN TECHNOLOGY COMPANY, INC. and :
BALDWIN AMERICAS CORPORATION,        :
                                      :
                  Plaintiffs,         :
                                      :
           -against-                  :
                                      :
PRINTERS' SERVICE, INC.,              :
                                      :
                  Defendant.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

<u>ORDER</u>
15 Civ. 07152 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiffs Baldwin Technology Company, Inc. ("Baldwin") and Baldwin Americas

Corporation ("Americas") move pursuant to Rule 65 of the Federal Rules of Civil Procedure for

a temporary restraining order and preliminary injunction against Defendant Printers' Service,

Inc. (Notice of Mot. at 1, dated Sept. 25, 2015, filed Oct. 6, 2015, ECF No. 48.) Plaintiffs seek

to prohibit Defendant "from violating the non-compete provision in the Parties' Distribution

Agreement." (Notice of Mot. at 1.)[1] Plaintiffs' motion is DENIED.

## I.      BACKGROUND AND PROCEDURAL HISTORY

On September 17, 2015 and September 30, 2015, this Court held hearings on Plaintiffs'

motions. For the purposes of this Order, this Court offers the following brief summary of the

facts, drawn from the parties' submissions and the representations made at the hearings.

Baldwin is a manufacturer and supplier of equipment for the print industry. (Sept. 10, 2015

---

[1] Plaintiffs also moved for a temporary restraining order and preliminary injunction prohibiting
Defendant "from infringing upon [Plaintiff Americas's] PREPAC trademark." (Notice of Mot.
at 1.) At the September 30, 2015 hearing, this Court issued an order from the bench prohibiting
Defendant from manufacturing and selling any product with the PREPAC trademark that was not
sold to Defendant or Defendant's affiliates by Baldwin. (Sept. 30, 2015 Tr. 35:08–35:13.)

Moore Aff. ¶ 3, ECF No. 13.)  Among the products it manufactures and supplies are cleaning

rolls and fabrics used in printing presses.  (Pls.' Mem. of Law in Supp. of Mot. for TRO at 2,

ECF No. 12.)  Defendant is a manufacturer and distributor of printing industry supplies.

(Amend. Compl. ¶ 14, ECF No. 45.)  Defendant and its "affiliated" entities ("Affiliates")[2] are

authorized to use the "Prisco" and "Printers' Service" trade names.  (Sept. 24, 2015 Liroff

Aff. ¶ 2, ECF No. 36.)

        Since 2000, Baldwin has sold product to Defendant's Affiliates, invoicing the Affiliates

directly and receiving payments directly from the Affiliates.  (Sept. 24, 2015 Liroff Aff. ¶ 3, ECF

No. 36.)  Baldwin and Printers' Service, Inc. entered into distribution agreements in 2000, 2004,

and 2009.  (Oct. 9, 2015 Liroff Aff. ¶ 4, ECF No. 50.)  Defendant alleges, and Plaintiffs do not

contest, that Baldwin drafted those agreements.  (Oct. 9, 2015 Liroff Aff. ¶ 4, ECF No. 50.)

Baldwin did not have written agreements with any of the Affiliates.  (Sept. 30, 2015 Tr. 49:25–

50:02.)

        There are only two parties to the November 9, 2009 Distribution Agreement ("2009

Agreement"), Baldwin Technology Company, Inc. and Printers' Service Inc.  (Sept. 10, 2015

Moore Aff., Ex. 1, Distribution Agreement at 1, ECF No. 13-1.)  "Printers' Service Inc." is

referenced as "PRISCO" throughout the 2009 Agreement.  (2009 Agreement at 1.)  The 2009

Agreement's introductory clauses explain that the parties entered into that Agreement because

---

[2] Plaintiffs and Defendant appear to disagree about who Defendant's Affiliates are.  Defendant
describes the Affiliates as: (1) Prisco Inc., (2) Printers' Service of Florida Inc., (3) Georgia
Graphics Inc., (4) Mid-West Merchandising Corp, (5) Prisco Merchandising Inc.,
(6) Prisco/Pacific Inc., (7) Prisco Graphics of Canada Inc., (8) Graphic Enterprises Inc., and
(9) Printers' Merchandising Corp.  (Oct. 9, 2015 Liroff Aff. ¶ 2, ECF No. 50.)  Plaintiffs also
describe Defendant as having nine affiliates, but Plaintiffs' list excludes Prisco Inc. and Prisco
Merchandising Inc., including instead Deleet Merchandising Corporation and Printers' Service
of Texas, Inc.  (Sept. 25, 2015 Pedowitz Decl. ¶ 7, ECF No. 43.)

"BALDWIN and PRISCO have worked together under prior agreements under which PRISCO has been marketing, selling, and distributing certain Baldwin Products . . . , and BALDWIN has been selling certain BALDWIN Products to PRISCO for resale by PRISCO to *PRISCO's* customers . . . . BALDWIN and PRISCO wish to extend that relationship . . . ." (2009 Agreement at 1 (emphasis added).)  The 2009 Agreement provides that "during the term of this Agreement and any Renewal Term and for a one (1) year period thereafter, [PRISCO] will not make or sell any Directly Competitive Cleaning Rolls for a one (1) year period starting from the date of expiration of the Initial Term or any subsequent Renewal Term." (2009 Agreement ¶ 14.3.)  The 2009 Agreement provided that it would terminate five years from November 9, 2009.  (*See* 2009 Agreement ¶ 14.1.)  It also contained a clause providing for automatic one-year renewals unless it was terminated by written notice six months before its expiration.  (2009 Agreement ¶ 14.2.)

The 2009 Agreement contains an arbitration clause providing that "[i]n the event a dispute arises under this Agreement and cannot be resolved by good faith negotiations between the parties in accordance with the [other provisions], the dispute shall be resolved by arbitration." (2009 Agreement ¶ 18.5.)  The 2009 Agreement also provides that "[n]otwithstanding anything to the contrary herein, each party shall have the right to seek injunctive relief in court at any time and under any circumstances." (2009 Agreement ¶ 18.6.)  The 2009 Agreement designates the Southern District of New York as the exclusive jurisdiction for an action seeking injunctive relief in court. (2009 Agreement ¶ 18.6.)  As of the September 30, 2015 hearing, neither party had sought arbitration of their dispute.  (*See* Sept. 30, 2015 Tr. 62:06–62:08.)

At some point in 2014, the relationship between Baldwin and Printers' Service, Inc. soured.  The Parties disagree about when the 2009 Agreement expired and therefore when the restriction on Printers' Service Inc.'s sale of cleaning rolls ends. (*Compare* Pls.' Mem. of Law in

Supp. of Mot. for TRO at 2 (Plaintiffs arguing the agreement expired on August 5, 2015), ECF

No. 12, *with* Def.'s Mem. of Law in Opp. to Pl.'s Mot. for TRO at 21–22 (Defendant arguing

that, at the latest, the agreement expired on November 9, 2014), ECF No. 37.)[3]

Since at least September 2015, some Affiliates have sold cleaning rolls under the "Prisco

Proclean" trade name. (Sept. 24, 2015 Liroff Aff. ¶ 28, ECF No. 36.)  Defendant Printers'

Service Inc. alleges that it has not itself sold any competing product. (*See* Def's Mem. of Law in

Further Opp'n at 9, ECF No. 49.)

---

[3] Plaintiffs argue that Defendant's performance declined such that Defendant was in material
breach of the 2009 Agreement.  (Pls.' Mem. of Law in Supp. of Mot. for TRO at 3.)  Baldwin
sent Defendant a letter on June 30, 2015 notifying Defendant of the purported material breach.
(*Id.* at 3–4.)  On August 5, 2015, Baldwin sent Defendant another letter stating that the 2009
Agreement was terminated due to Defendant's failure to cure the purported defaults.  (*Id.* at 4.)
Plaintiffs argue that the 2009 Agreement therefore terminated on August 5, 2015 and that the
restriction on Defendant's sale of cleaning rolls ends one year from that date.  (*See Id.* at 2.)

Defendant argues that the 2009 Agreement terminated on either July 31, 2014 or November 9,
2014.  (Def.'s Mem. of Law in Opp. to Pls.'s Mot. for TRO at 21.)  On May 9, 2014, Defendant
sent Baldwin a letter purporting to terminate the 2009 Agreement as of July 31, 2014 under a
provision of the 2009 Agreement that permits one party to terminate the agreement in the event
that the other party experiences a change of ownership.  (*See id.* at 21–22; *see also* 2009
Agreement ¶ 14.7.)  Plaintiffs argue that Defendant could not terminate the 2009 Agreement
under that provision because Defendant had previously consented to the change in ownership.
(Pls.' Supp. Mem. of Law at 7, ECF No. 31.)

Defendant argues in the alternative that the 2009 Agreement expired on November 9, 2014,
when the initial five-year term of the 2009 Agreement came to an end.  (Def.'s Mem. of Law in
Opp. to Pls.'s Mot. for TRO at 22.)  Therefore, under Defendant's argument, the restriction on
Defendant's sale of cleaning rolls ended on November 9, 2015 at the latest.  Plaintiffs argue that
the 2009 Agreement automatically renewed for a one-year term under the renewal clause as
Defendant's May 9, 2014 letter did not give specific notice of non-renewal.  (Pls.' Supp. Mem.
of Law at 8–9.)

## II.     LEGAL STANDARD FOR A PRELIMINARY INJUNCTION

The decision to grant or deny a preliminary injunction rests in a district court's sound

discretion. *Am. Exp. Fin. Advisors Inc. v. Thorley*, 147 F.3d 229, 232 (2d Cir. 1998).  A

preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted

unless the movant, by a clear showing, carries the burden of persuasion." *Grand River Enter. Six*

*Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quoting *Moore v. Consol. Edison Co.*, 409

F.3d 506, 510 (2d Cir. 2005)).  "Where the parties have agreed to arbitrate a dispute, a district

court has jurisdiction to issue a preliminary injunction to preserve the status quo pending

arbitration." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 894–95 (2d Cir. 2015)

(citing *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1052–53 (2d

Cir. 1990)).[4]  "The standard for such an injunction is the same as for preliminary injunctions

_____

[4] As of the September 30, 2015 hearing, Baldwin had not sought arbitration of its dispute with
Defendant.  (*See* Sept. 30, 2015 Tr. 62:06–62:08.)  Plaintiffs argue that, under the 2009
Agreement, they are entitled to a permanent injunction even without a decision in arbitration.
(Sept. 30, 2015 Tr. 66:22–67:08.)  The "strong federal policy favoring arbitration," however,
requires courts to "construe arbitration clauses as broadly as possible." *Oldroyd v. Elmira Sav.
Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998) (internal quotation marks and citations omitted).
Accordingly, where a contract has both a broad arbitration clause and a clause permitting the
parties to seek injunctive relief before a court, courts in this District have construed the latter
clauses as permitting the parties to seek "injunctive relief . . . in aid of arbitration, rather than . . .
transforming arbitrable claims into nonarbitrable ones depending on the form of relief prayed."
*Remy Amerique, Inc. v. Touzet Distribution, S.A.R.L.*, 816 F. Supp. 213, 218 (S.D.N.Y. 1993);
*see also WMT Inv'rs, LLC v. Visionwall Corp.*, No. 09 Civ. 10509, 2010 WL 2720607, at *4
(S.D.N.Y. June 28, 2010) ("[I]f there is a reading of the various agreements that permits the
arbitration clause to govern, the Court will choose it."); *Erving v. Virginia Squires Basketball
Club*, 468 F.2d 1064, 1067 (2d Cir. 1972) ("Both parties are required to arbitrate any disputes
arising between them.  The provision relative to 'obtaining an injunction or other equitable
relief' is merely declaratory of existing legal rights.")

generally." *Id.* at 895 (citing *Roso–Lino Beverage Distribs., Inc. v. Coca–Cola Bottling Co.*, 749 F.2d 124, 125–26 (2d Cir. 1984)).

A party seeking a preliminary injunction must demonstrate: (1) "a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor;" (2) "a likelihood of irreparable injury in the absence of an injunction;" (3) "that the balance of hardships tips in the plaintiff's favor;" and (4) "that the public interest would not be disserved by the issuance of an injunction." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)). "In non-compete cases, such as this one, the irreparable harm analysis and the likelihood of success on the merits analysis are closely related and often conflated." *IBM Corp. v. Visentin*, No. 11 Civ. 00399, 2011 WL 672025, at *7 (S.D.N.Y. Feb. 16, 2011) (quoting *IBM Corp. v. Papermaster*, No. 08 Civ. 09078, 2008 WL 4974508, at *6 (S.D.N.Y. Nov. 21, 2008)), *aff'd*, 437 F. App'x 53.

"Irreparable harm is an injury that is not remote or speculative but actual and imminent, and 'for which a monetary award cannot be adequate compensation.'" *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) (quoting *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). "[I]rreparable harm exists only where there is a threatened imminent loss that will be very difficult to quantify at trial." *Id.* at 38. Consequently, "where monetary damages may provide adequate compensation, a preliminary injunction should not issue." *Javaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir.1995). "[A] movant's loss of current or future market share may constitute irreparable harm." *Pryor*, 481 F.3d 60, 67 (2d Cir. 2007).

**III.   PLAINTIFFS HAVE FAILED TO MEET THE STANDARD FOR A PRELIMINARY INJUNCTION**

New York courts are reluctant to "to rewrite the plain language of [contracts] negotiated between sophisticated business entities." *Cellular Tel. Co. v. 210 E. 86th St. Corp.*, 839 N.Y.S.2d 476, 480 (1st Dep't 2007); (*see* Amended Compl. ¶ 64 (describing Baldwin and "Prisco" as "sophisticated business entities"), ECF No. 45.)  No Affiliate is a signatory to the 2009 Agreement, nor is any Affiliate a party to the 2009 Agreement.  (*See* 2009 Agreement at 1.)

Plaintiffs argue that Defendants' Affiliates may be enjoined under the 2009 Agreement as agents of Defendant.  (*See* Sept. 30, 2015 Tr. 48:14–48:21.)  Plaintiffs cite New York case law for the principle that "[a] court of equity will not permit a wholly owned subsidiary unconscionably or wantonly to commit violations of agreements formerly entered into by its parent." (Sept. 30, 2015 Tr. 47:3–47:8 (citing *Madison Pictures, Inc. v. Pictorial Films, Inc.*, 151 N.Y.S.2d 95, 105 (Sup. Ct. 1956)).  But Plaintiffs have not submitted evidence that Defendant and Affiliates have a parent-subsidiary relationship or even that they are commonly owned.[5] (Sept. 30, 2015 Tr. 47:16–47:18.)  Instead, they rely on evidence of overlapping management, shared premises, and centralized ordering.  (Sept. 30, 2015 Tr. 48:01–48:07.)  Plaintiffs conclude that "[t]he evidence . . . shows inextricable connections between Printers' Service Inc. and its Affiliates." (Pls.' Reply Mem. at 9, ECF No. 53.)  But evidence of "connections" does not support a finding of an agency relationship that would make Defendant liable for the Affiliates' conduct.

Plaintiffs' representations about the decline in Baldwin's sales are also unreliable.  (*See* Sept. 30, 2015 Tr. 78:22–79:03; 79:20–80:02.)  The figures that Plaintiffs represented at the

---

[5] At the September 30, 2015 hearing, Plaintiffs' counsel told the Court, "I'm not standing here today with something showing the common ownership."  (Sept. 30, 2015 Tr. 47:17–47:18.)

September 30, 2015 hearing were projected figures and did not distinguish between losses resulting from the termination of the 2009 Agreement and losses resulting from Defendant's competition.  To further support their allegations of imminent injury, Plaintiffs refer to photographs taken by a Baldwin employee purportedly showing competing cleaning rolls sold by Defendant to a customer in Tennessee; the photographs show cleaning rolls labeled with the word "Prisco." (*See* Sept. 17, 2015 Allen Aff. ¶¶ 2–4 (affidavit describing photographs), ECF No. 25; Ex. 8 (photographs of cleaning rolls), ECF No. 29-1.)  Further, Plaintiffs point to press releases bearing the "Prisco" and "Printers' Service" trade names and advertising competing cleaning rolls.  (*See* Sept. 10, 2015 Moore Aff., Exs. 5–6, ECF Nos. 13-5–13-6.)  Additionally, Plaintiffs assert that customers have "ceased or delayed ordering product from Baldwin in order to test or use the competing products offered by Prisco." (Sept. 18, 2015 Bowers Aff. at ¶ 6, ECF No. 26.)  Defendant's Affiliates, however, are authorized to use the "Prisco" and "Printers' Service" trade names, (Sept. 24, 2015 Liroff Aff. ¶ 2, ECF No. 36), and Defendant denies selling any competing product, (Def's Mem. of Law in Further Opp'n at 9, ECF No. 49).

On this record, Plaintiffs have not made a sufficient showing that Defendant is now competing with Plaintiffs, or that any Affiliates' competing actions can be attributed to Defendant.  Accordingly, Plaintiffs have not shown a likelihood of success on the merits, an imminent likelihood of irreparable injury in the absence of an injunction, or that the balance of hardships tips in Plaintiffs' favor.[6]

---

[6] The public interest is not disserved by the grant or denial of an injunction that arises in the context of a commercial matter between two private parties. *Uni-World Capital L.P. v. Preferred Fragrance, Inc.*, 73 F. Supp. 3d 209, 237 (S.D.N.Y. 2014).  Therefore, this prong does not apply.

IV.     **CONCLUSION**

As Plaintiffs have failed to show a likelihood of success on the merits, a likelihood of

irreparable harm, or that the balance of hardships tips in their favor, Plaintiffs' motion for a

temporary restraining order and preliminary injunction to prohibit Defendant from violating the

twelve-month non-compete provision of the 2009 Agreement is DENIED.


Dated: New York, New York
       January 27, 2016                                        SO ORDERED.


                                                               GEORGE B. DANIELS
                                                               United States District Judge